The Honorable Bobby Hogue State Representative P.O. Box 97 Jonesboro, Arkansas 72403-0097
Dear Representative Hogue:
This official Attorney General opinion is rendered in response to certain questions you have raised concerning 911 service. More specifically, you have asked:
 (1) If a city has not granted an exclusive franchise for ambulance services within the city and does not have an ordinance regulating ambulance services, can a city-operated 911 emergency dispatch center choose to refuse to dispatch a private, for-profit ambulance service when it dispatches a private, non-profit ambulance service?
 (2) If a county government does not have an ordinance regulating ambulance services, can a county-operated 911 emergency dispatch center choose to refuse to dispatch a private, for-profit ambulance service when it dispatches a private, non-profit ambulance service?
 (3) Must the city or county 911 systems dispatch such ambulance services on an equal basis?
RESPONSE
Question 1 — If a city has not granted an exclusive franchise forambulance services within the city and does not have an ordinanceregulating ambulance services, can a city-operated 911 emergency dispatchcenter choose to refuse to dispatch a private, for-profit ambulanceservice when it dispatches a private, non-profit ambulance service?
It is my opinion that a city such as the one you have described can choose to refuse to dispatch a private, for-profit ambulance service when it dispatches a private, non-profit ambulance service. However, the city may be subject to certain competitive solicitation requirements.
I recently addressed this question in Attorney General Opinion No.98-049. In that opinion, I took the position that under Arkansas law, a city that has not granted an ambulance franchise is not required to allow the participation of more than one ambulance service provider in its 911 program. This conclusion is supported by the fact that the Arkansas Public Safety Communications Act of 1985 states no requirements regarding the choice of a service provider which is dispatched to calls.
However, I also noted in Opinion No. 98-049 that a viable argument could be made that by limiting participation, the city has, in effect, granted an exclusive franchise to the participating provider. If the city is deemed to have done so, it could be subject to certain requirements regarding competitive solicitation governing cities that grant franchises. These requirements arise out of A.C.A. § 14-266-102(b)(1)(2) and (3) and § -107(b) and (c), which are part of the Municipal Ambulance Licensing Law.
Rather than reiterate the reasoning and law stated in Opinion No.98-049, I have attached a copy of that opinion for your review. I have also enclosed a copy of Attorney General Opinion No. 97-163, which discusses the competitive solicitation requirements.
Question 2 — If a county government does not have an ordinance regulatingambulance services, can a county-operated 911 emergency dispatch centerchoose to refuse to dispatch a private, for-profit ambulance service whenit dispatches a private, non-profit ambulance service?
It is my opinion that if a county government does not have an ordinance regulating ambulance services, a county-operated 911 emergency dispatch center can choose to refuse to dispatch a private, for-profit ambulance service when it dispatches a private, non-profit ambulance service.
In the absence of a county ordinance regulating ambulance services, this dispatch center will be governed exclusively by the provisions of the Arkansas Public Safety Communications Act of 1985, codified at A.C.A. §12-10-301 et seq. As noted previously, that Act does not set forth any requirements regarding the choice of service providers which are dispatched to calls. The only dispatch requirement that is stated in the Act is set forth in A.C.A. § 12-10-307, which states:
12-10-307. Transmission of requests.
 Each 911 public safety communications center shall be capable of transmitting requests for law enforcement, fire fighting, disaster, or major emergency response, emergency medical or ambulance services, or other emergency services to a public or private safety agency that provides the requested services where such services are available to the political subdivision.
A.C.A. § 12-10-307.
The above-quoted provision requires nothing more than that the dispatch center be capable of transmitting calls to a public or private agency whose services are available. It speaks in terms of capability to transmit calls, and states no requirement concerning the agency to which calls are actually transmitted. The statute therefore appears to allow dispatch centers the discretion to choose the agencies to which they will transmit calls.
On this basis, I conclude that in the absence of a county ordinance regulating ambulance service, a county-operated 911 dispatch center can choose to refuse to dispatch a private, for-profit ambulance service when it dispatches a private, non-profit ambulance service.
Question 3 — Must the city or county 911 systems dispatch such ambulanceservices on an equal basis?
For the reasons stated in response to Questions 1 and 2, it is my opinion that neither the city nor the county 911 system is required to dispatch ambulance services on an equal basis.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh